UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEVELL TAYLOR, | ) | |
| | ) | |
| Petitioner, | ) | 10 C 7489 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| RANDY GROUNDS, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Levell Taylor, a state inmate serving a thirty-five year sentence for first degree murder, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Taylor initially named as respondent Andy Ott, the warden of Graham Correctional Center, where Taylor was incarcerated when he filed his petition. *See* Rule 2(a) of the Rules Governing Section 2254 Cases. Because Taylor is now incarcerated at Robinson Correctional Center, the proper respondent is Randy Grounds, the warden of that facility. *See Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) ("the proper respondent is the warden of the facility where the prisoner is being held"). Accordingly, Grounds is substituted for Ott as the respondent. *See* Fed. R. Civ. P. 25(c); *Bridges v. Chambers*, 425 F.3d 1048, 1049 (7th Cir. 2005) ("if the custodian is named or can be substituted as respondent, the suit can continue, though the respondent who is not a custodian should be dropped") (citations omitted).

Taylor seeks habeas relief on the ground that he received ineffective assistance of counsel at trial, in violation of the Sixth and Fourteenth Amendments. Taylor's habeas petition is denied, but a certificate of appealability is issued.

**Background**

A federal habeas court presumes correct the factual findings made by the last state court to adjudicate the case on the merits, unless those findings are rebutted by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Rever v. Acevedo*, 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003). The last state court to make factual findings was the Supreme Court of Illinois in *People v. Taylor*, 930 N.E.2d 959 (Ill. 2010). As shown below, Taylor has not shown by clear and convincing evidence that any of those findings are incorrect. The following sets forth the facts found by the state supreme court as well as the history of Taylor's criminal proceedings in state court.

A.  **Factual Background**

On August 11, 1996, Bruce Carter, Keith Baker, and four friends—all members of a west side Chicago street gang—drove in Carter's car to the house of Tyeshia Clinton's mother for a barbeque. Carter parked his car near the side of the house. Carter and Baker went to the front yard and chatted with Clinton. They were approached by members of a south side Chicago street gang, including Taylor, his brother Lowell Taylor (referred to herein as "Lowell"), and Duante Anderson. After shouting "You don't know where you at. You in Motown"—the south side gang called its turf "Motown"—Anderson approached Carter and punched him in the face. Baker and Carter were forced to the ground in the ensuing melee and were kicked by Anderson, Taylor, and Lowell. Carter's car windows were smashed. Carter and Baker eventually broke away and ran toward the front door of the house. Witnesses heard two gun shots. Carter was shot and died shortly thereafter from internal bleeding. *See Taylor*, 930 N.E.2d at 962-63.

Chicago Police Detective James O'Brien interviewed Baker and several other witnesses. Baker told O'Brien that Anderson punched Carter, that Taylor passed a gun to Lowell, and that

Lowell shot Carter. O'Brien also interviewed Phillip Marshall, a south side gang member. Marshall later testified to a grand jury that he had known Anderson, Taylor, and Lowell all of his life, and that on the date in question, he was standing across the street from the front yard of the Clinton house and saw the fight begin, heard gunshots, and saw Lowell holding a gun while running away from the front yard. No gun was recovered. *See id*. at 963.

### B. Trial and Direct Appeal

The grand jury indicted Anderson, Taylor, and Lowell for first degree murder. The three defendants were tried in separate but simultaneous trials. Taylor and Anderson opted for a bench trial, while Lowell chose a jury trial. *See ibid*. Illinois law allows simultaneous trials against two or more criminal defendants so long as evidence admissible against one defendant is not considered against any other defendant. *See Mack v. Peters*, 80 F.3d 230, 235 (7th Cir. 1996); *People v. Schmidt*, 545 N.E.2d 665, 666, 669 (Ill. 1989); *People v. Crossley*, 603 N.E.2d 575, 581-82 (Ill. App. 1992); *People v. Gholston*, 464 N.E.2d 1179, 1189 (Ill. App. 1984).

Taylor and Lowell both were represented by Raymond Prusak, while a different attorney represented Anderson. The prosecution's theory of the case was that Lowell was guilty of first degree murder because he shot Carter, and that Anderson and Taylor were legally accountable for Lowell's acts. Baker testified at trial that he saw Anderson punch Carter, that he saw Taylor hand a gun to Lowell, and that he saw Lowell shoot Carter. When Marshall testified, he recanted his grand jury testimony about seeing Lowell with a gun after the shooting. Marshall's grand jury testimony then was read into the record for impeachment purposes. *See Taylor*, 930 N.E.2d at 963.

Anderson's attorney and Prusak both cross-examined the prosecution witnesses. No defendant testified or offered any witnesses or other evidence. During closing arguments,

Lowell shot Carter. O'Brien also interviewed Phillip Marshall, a south side gang member. Marshall later testified to a grand jury that he had known Anderson, Taylor, and Lowell all of his life, and that on the date in question, he was standing across the street from the front yard of the Clinton house and saw the fight begin, heard gunshots, and saw Lowell holding a gun while running away from the front yard. No gun was recovered. *See id*. at 963.

### B. Trial and Direct Appeal

The grand jury indicted Anderson, Taylor, and Lowell for first degree murder. The three defendants were tried in separate but simultaneous trials. Taylor and Anderson opted for a bench trial, while Lowell chose a jury trial. *See ibid*. Illinois law allows simultaneous trials against two or more criminal defendants so long as evidence admissible against one defendant is not considered against any other defendant. *See Mack v. Peters*, 80 F.3d 230, 235 (7th Cir. 1996); *People v. Schmidt*, 545 N.E.2d 665, 666, 669 (Ill. 1989); *People v. Crossley*, 603 N.E.2d 575, 581-82 (Ill. App. 1992); *People v. Gholston*, 464 N.E.2d 1179, 1189 (Ill. App. 1984).

Taylor and Lowell both were represented by Raymond Prusak, while a different attorney represented Anderson. The prosecution's theory of the case was that Lowell was guilty of first degree murder because he shot Carter, and that Anderson and Taylor were legally accountable for Lowell's acts. Baker testified at trial that he saw Anderson punch Carter, that he saw Taylor hand a gun to Lowell, and that he saw Lowell shoot Carter. When Marshall testified, he recanted his grand jury testimony about seeing Lowell with a gun after the shooting. Marshall's grand jury testimony then was read into the record for impeachment purposes. *See Taylor*, 930 N.E.2d at 963.

Anderson's attorney and Prusak both cross-examined the prosecution witnesses. No defendant testified or offered any witnesses or other evidence. During closing arguments,

Anderson's counsel and Prusak attacked the credibility of the prosecution witnesses and described purported discrepancies in their testimony. Their theory of the case was that guilt was not proven beyond a reasonable doubt. *See id*. at 963-64.

The jury convicted Lowell. The trial judge acquitted Anderson but convicted Taylor, finding that he had handed the gun to Lowell and thus was legally accountable for the murder. *See id*. at 964. Taylor and Lowell appealed; each claimed, among other things, ineffective assistance of counsel due to Prusak's alleged conflict of interest in jointly representing them. The Appellate Court of Illinois affirmed. *People v. Taylor*, Nos. 1-99-0071 & 1-99-1982 (Ill. App. May 25, 2011) (Doc. 7-1 at 2-17). Taylor did not seek review from the Supreme Court of Illinois. Doc. 7 at 2.

### C. Post-Conviction Proceedings

Taylor then sought post-conviction relief in state court, again charging ineffective assistance of counsel based on Prusak's alleged conflict of interest. Doc. 7-1 at 19-28; Doc. 16 at 4, 8-9. Taylor argued that Prusak did not call "potential defense witnesses" who were present at the shooting, and who were willing to testify, because "they would make [Prusak's] other client [Lowell] the shooter." *Taylor*, 930 N.E.2d at 964. At the evidentiary hearing held by the state trial court, Taylor called five witnesses: Joyce Parker (the mother of Taylor and Lowell), Teddy Plummer, Rufus Bingham, Anderson, and Taylor.

Parker testified as follows. She retained Prusak to represent both of her sons. At some point prior to the trial, she and her husband brought Taylor, who was out on bond, and four potential witnesses—Michael Woods, Plummer, Bingham, and Natavian Simms—to Prusak's office. Parker testified that Prusak, after interviewing the potential witnesses, told Parker and Taylor that he would not call any of them "because they would hurt Lowell's case." *Id*. at 965.

-4-

Prusak repeatedly assured Parker that Taylor "did not need the witnesses because [the State] had nothing on [Taylor]" and that there was "nothing to worry about." *Ibid*. Although Parker was unhappy about Prusak's decision, she did not consider firing him and retaining a new attorney because she had already paid him "so much money" and could not afford a new attorney. *Ibid*.

Bingham testified that he was present when Carter was shot, that he saw Lowell shoot Carter, and that he did not see Taylor hand a gun to Lowell. Bingham testified that he told Prusak what he had seen, but that Prusak did not call him at trial because his testimony would be "worse for Lowell." *Ibid*. On cross-examination, Bingham admitted that when questioned by the police immediately after the incident, he did not say that Taylor did not give Lowell a gun. Bingham also acknowledged that he had five prior felony convictions and that he was a friend of Taylor's and a fellow south side gang member.

Like Bingham, Plummer testified that he was present when Carter was shot, that he saw Lowell shoot Carter, and that he did not see Taylor give Lowell a gun. Plummer recalled that Taylor was not with the group of people who surrounded Carter when he was shot. Plummer claimed that when he told these things to Prusak, Prusak responded that his testimony "would hurt both of [Prusak's] clients." *Id*. at 965-66. On cross-examination, Plummer admitted that he never told the police that Taylor did not hand a gun to Lowell. Plummer also admitted that he had two prior felony convictions and one prior misdemeanor conviction, that he was friends with Taylor and Lowell, and that he was a member of a street gang that "get[s] along" with the south side gang to which Taylor and Lowell belonged. *Id*. at 966.

Anderson testified that although he did not see Lowell shoot Carter, he did see Lowell holding a gun after the shooting. Anderson added that Taylor did not hand Lowell a gun because Taylor "was on the side of the building destroying [Carter's] car." *Ibid*. Anderson admitted,

-5-

however, that he could not see Taylor from where he was located during the incident. Anderson also admitted to four prior felony convictions and one prior misdemeanor conviction, and that he was a South side gang member and Taylor's friend.

Taylor testified as follows. He went to Prusak's office with his parents on three occasions. They were accompanied on the second visit by Plummer, Woods, Bingham, and Simms. Taylor told Prusak that he saw Lowell shoot Carter and that he did not give Lowell the gun. Prusak told Taylor that he would not need to testify because he "had [his] case beat." *Ibid*. On cross-examination, Taylor acknowledged that he was angry about his conviction and thirty-five year prison sentence, and that he was "especially angry" with Prusak for not calling any of his proffered witnesses at trial. *Ibid*. Taylor testified that he did not hand a gun to Lowell and that he was on the side of Clinton's house "busting out [Carter's] car windows" when the shooting occurred. *Ibid*. Taylor admitted that he was a south side gang member and that he was friends with fellow gang members Bingham and Plummer. Taylor further admitted that when he was arrested two hours after the shooting, he did not mention any of his proffered witnesses (Plummer, Woods, Bingham, and Simms) to the police or to the Assistant State's Attorney who questioned him.

The prosecution called Prusak as its sole witness. After describing his qualifications and experience, Prusak testified that the "first thing" he does when asked to represent co-defendants is to consider whether an actual or potential conflict exists. Prusak stated his belief that no conflict existed, explaining: "The trials were severed. They were going to be separate juries or one was going to take a bench trial. From the beginning we all knew that [Taylor] was going to have a bench trial because we all believed that the case against him was fairly weak." *Id*. at 967.

Prusak recalled meeting with Taylor and members of Taylor's family on several occasions. Prusak remembered one occasion when several potential witnesses came to his office with Taylor's family. Prusak did not call any witnesses for Taylor because he believed there was no reason to do so. According to Prusak, the case against Taylor "was a single finger I.D. case, meaning there was only one person who had identified [Taylor as the person] who had actually handed a gun to his brother who in turn shot the victim." *Ibid*. Further weakening the case against Taylor was the fact that the only two eyewitnesses, Marshall and Baker, were gang members who had lied in the past. For these reasons, Prusak took a bench trial for Taylor.

Prusak's decision not to call Taylor's potential witnesses also resulted from his assessment of their credibility. Prusak considered discrepancies between what they told him and what they had told the police, and discrepancies between what Taylor told him (that he had a gun and was using it to break the windows of Carter's car) and what he had told the police (that he was two houses away when the fight began). Prusak also considered the witnesses' backgrounds and the "terrible impression" they made on him. *Id*. at 968. Prusak summarized his view as follows:

> These witnesses had bad backgrounds. I wish I can remember in great detail exactly what their backgrounds were, but they were convicted felons, at least one or two of them. And the other ones were, they were inconsistent with each other. And had I seen one witness, anybody … [who] could have offered anything positive for [defendant] I would have put them on.
>
> But in light of the inconsistencies that they were saying, in light of what he [defendant] told me which was different than what they were telling me, and in light of their backgrounds I thought that I would overtry the case and that I would give ammunition to the State, and I would lose any chance I had of winning the case, which was basically a single-finger I.D. based on reasonable doubt.

*Ibid*. (internal quotation mark omitted, alterations in original).

Prusak testified that he discussed his assessment of Taylor's case "in detail" with Taylor. *Ibid*. Prusak also testified that if Taylor had wanted certain witnesses to testify, or if he had wanted to testify on his own behalf, Prusak would have explained his reluctance but ultimately would have acceded to Taylor's wishes. Although Prusak did not remember whether Taylor's mother requested that he call specific witnesses, if she had made that request in Taylor's presence, Prusak would have honored it. Prusak denied saying that he had Taylor's case "beat"; instead, he told Taylor and his parents that the case against Taylor was weak. *Id*. at 969. Prusak also denied ever saying that he would not call Taylor's proffered witnesses because doing so would hurt Lowell's case.

In rebuttal, Taylor admitted that he did not tell the police that he was breaking Carter's windows during the incident, and that instead he told the police that he was two houses away when the fight began. Taylor denied telling Prusak that he used a gun to smash the windows of Carter's car.

The state trial court denied Taylor's post-conviction petition, stating:

> This case is up for a ruling. It's been continued about thirty some times, and I have reviewed the transcripts on several occasions, the Appellate opinion, the motion presented by the attorneys. We also had a hearing where Mr. Prusak testified, and I considered all that in determining whether or not the petition has any merit.
>
> After considering all the evidence, the testimony, and the arguments of the lawyers, this Court, it is the Court's opinion that Mr. Taylor did not receive any substantial deviation of his constitutional rights, and therefore the PC petition is hereby denied.

Doc. 17-16 at 83. The state appellate court affirmed. *People v. Taylor*, No. 1-06-0938 (Ill. App. Oct. 2, 2008) (Doc. 7-1 at 30-39). The Supreme Court of Illinois allowed Taylor's petition for leave to appeal and, without dissent, affirmed. *People v. Taylor*, 930 N.E.2d 959 (Ill. 2010).

In analyzing Taylor's ineffective assistance of counsel claim, the state supreme court applied *Cuyler v. Sullivan*, 446 U.S. 335 (1980), which sets forth the Sixth Amendment standard for evaluating potential conflicts of interest that were not brought to the trial court's attention. 903 N.E.2d at 970-74. The court quoted *Sullivan* for the proposition that "[w]here, as here, a potential conflict of interest is not brought to the attention of the trial court, 'a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance.'" *Id*. at 971 (quoting *Sullivan*, 446 U.S. at 350). The court elaborated upon this standard as follows:

> Certainly, the defendant is not required to prove prejudice in that the conflict contributed to his or her conviction. However, to prevail on a claim of ineffective assistance of counsel because of joint representation of criminal codefendants by a single attorney, a defendant must show that an actual conflict of interest manifested at trial. What this means is that the defendant must point to some specific defect in his counsel's strategy[,] tactics, or decision making attributable to the conflict.

*Id*. at 971-72 (internal quotation marks and citations omitted). The court concluded that Taylor "failed to establish an actual conflict of interest in the joint representation of himself and Lowell that adversely affected Prusak's performance at trial." *Id*. at 972.

To support its conclusion, the court first noted that "the only alleged specific defect in Prusak's representation that [Taylor] attributes to the claimed conflict is that Prusak failed to call [Taylor's] proffered witnesses, who would have testified that only Lowell was involved in the shooting." *Ibid*. In rejecting Taylor's submission, the court reasoned that a conflict of interest "was not inherent in the joint representation of [Taylor] and Lowell" and "never manifested." *Ibid*. Rather, the court held, "[a]t most, [Taylor's] proffered witnesses merely raised the *possibility* that the interests of [Taylor] and Lowell may diverge." *Ibid*. The court acknowledged that the proffered witnesses testified at the post-conviction hearing that they "would have testified at [Taylor's] trial that [Taylor] did not hand a gun to Lowell … [and that]

Prusak did not call them to testify … because they would have identified Prusak's other client, Lowell, as the shooter." *Ibid*. But the court found merit to Prusak's explanation that "his decision not to call [Taylor's] proffered witnesses was not attributable to any alleged conflict of interest, but rather because, in his professional judgment, they were weak witnesses, who offered inconsistent testimony and who were not credible." *Ibid*. As the court explained:

> Bingham's testimony did not remove [Taylor] from the fight. However, Plummer testified, consistent with Woods' affidavit, that [Taylor] was not involved in the fight. Further, Anderson testified that [Taylor] was not involved in the fight because he was destroying the victim's car; however, Anderson admitted on cross-examination that he could not see [Taylor] from where Anderson stood. [Taylor] testified that he was smashing the victim's car windows, but he admitted that he did not tell this to police.

*Id*. at 973. The court also credited Prusak's denial of the suggestion that he had told Taylor, Parker, and the others "that the case was already 'beat' or that he would not call the witnesses because to do so would hurt Lowell's case." *Id*. at 973.

Taylor filed a petition for a writ of certiorari, which the United States Supreme Court denied. *Taylor v. Illinois*, 131 S. Ct. 1466 (2011).

## Discussion

Taylor's sole claim is that he was denied his right to conflict-free counsel in violation of the Sixth and Fourteenth Amendments of the United States Constitution. The parties agree that Taylor properly exhausted his state court remedies regarding that claim, that the Supreme Court of Illinois adjudicated that claim on the merits, and that 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applies to the petition. "[I]n all habeas corpus proceedings under [the AEDPA], the successful petitioner must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters*, 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). "Federal

-10-

habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (one citation omitted). Taylor maintains that habeas relief is warranted on three grounds, which are considered in turn.

I.  The Illinois Supreme Court's Application of *Cuyler v. Sullivan*

Taylor agrees that *Cuyler v. Sullivan* is the Supreme Court precedent that most directly bears on his claim. And Taylor does not take issue with the proposition, applied by the state supreme court, that *Sullivan* holds that "[i]n order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Sullivan*, 446 U.S. at 348. Nor could Taylor dispute that proposition, as the Supreme Court confirmed over twenty years later that "'an actual of conflict of interest' mean[s] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties," and that "until … a defendant shows that his counsel *actively represented* conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Mickens v. Taylor*, 535 U.S. 162, 172, 175 (2002) (quoting *Sullivan*, 446 U.S. at 350) (internal quotation marks omitted). Taylor nonetheless argues that the state supreme court's decision is contrary to, and reflects an unreasonable application of, *Sullivan*.

A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides

a case differently than [the Supreme Court did] on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002); *see also Brown v. Finnan*, 598 F.3d 416, 421 (7th Cir. 2010). Taylor maintains that the state supreme court's "decision that the conflict of interest must 'manifest at trial' in order for defendant to establish a Sixth Amendment violation is contrary to *Sullivan*." Doc. 7 at 20. Taylor is incorrect. The state supreme court explained that the "manifest at trial" requirement "means … that the defendant must point to some specific defect in his counsel's strategy[,] tactics, or decision making attributable to the conflict." *Taylor*, 930 N.E.2d at 971-72 (internal quotation marks omitted). That rule tracks, not contradicts, the Supreme Court's own understanding of *Sullivan*. *See Mickens*, 535 U.S. at 174 ("to void the conviction, for petitioner to establish that the conflict of interest adversely affected his counsel's performance"). Given this, it cannot be said that the state supreme court applied a rule different from the rule established by the Supreme Court.

Nor did the state supreme court decide Taylor's case differently than the Supreme Court decided some other case on materially indistinguishable facts. In *Sullivan*, the Supreme Court did not have occasion to review the adequacy of the testimony offered in state court. Rather, *Sullivan* reviewed a Third Circuit decision granting habeas relief on the ground that the petitioner "had shown that the multiple representation in []his case involved a possible conflict of interest." 446 U.S. at 350. The Supreme Court vacated the decision because the Third Circuit applied the wrong legal standard. *Ibid*. Because the Supreme Court did not hold that the petitioner satisfied the correct legal standard, it is difficult to see how the state supreme court here decided this case differently from *Sullivan*, let alone on materially indistinguishable facts. Given this, the state supreme court's decision is not "contrary to" *Sullivan*. *See Boss v Pierce*, 263 F.3d 734, 739 (7th Cir. 2001) ("a state court decision that draws from Supreme Court

precedent the correct legal rule and applies it in a factually distinguishable situation will not satisfy the 'contrary to' standard, no matter how misguided the decision's ultimate conclusion").

Taylor also invokes the "unreasonable application" component of § 2254(d)(1), arguing that the state supreme court's decision unreasonably applied *Sullivan* to the facts of this case. "For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Richter*, 131 S. Ct. at 785 (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id*. at 786 (internal quotation marks omitted). Put another way, to obtain relief under the "unreasonable application" component of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

Taylor contends that a "proper application" of *Sullivan* "would have recognized that the simultaneous representation of [Taylor and Lowell] put Prusak in the untenable position of either attacking one client, [Lowell], by presenting witnesses who would identify him as the shooter, or sacrificing a clearly viable defense for [Taylor]." Doc. 7 at 18; *see also id*. at 21 ("the state court should have recognized that, in making the choice of defenses for codefendants, the failure to pursue a strategy that would have helped one defendant at the expense of another is the very definition of a conflict of interest and a violation of the Sixth Amendment"); *id*. at 22 (arguing that the witnesses would have "negate[d]" Taylor's "legal accountability." Taylor's premise is that his proffered witnesses, if called at trial, would have given him a "clearly viable defense" and "exonerated" him. *Id*. at 18, 22. The state supreme court rejected that premise, crediting

Prusak's assessment that the witnesses lacked credibility, that they offered conflicting versions of central events, and that calling them would have undermined rather than advanced Taylor's effort to defeat the prosecution's relatively weak case against him. *Taylor*, 930 N.E.2d at 972-73. The state supreme court's holding on this point may be debatable among reasonable minds, but under no circumstances could it be deemed "so lacking in justification that there was an error well understood and comprehended … beyond any possibility for fairminded disagreement." *Richter*, 131 S. Ct. at 786-87. And because the state supreme court's assessment does not fall below that low bar, its rejection of Taylor's claim on the ground that the joint representation had no adverse effect on Prusak's representation of Taylor cannot be deemed an unreasonable application of *Sullivan*, as "[a]n 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens*, 535 U.S. at 171 n.4.

II. **The Illinois Supreme Court's Evaluation of Prusak's Reasons for Not Calling the Proffered Witnesses**

Taylor next argues that the state supreme court's use of a "subjective standard" in evaluating, and according a "high degree of deference" to, Prusak's reasons for not calling Taylor's proffered witnesses was contrary to, and involved an unreasonable application of, *Sullivan* and *Strickland v. Washington*, 466 U.S. 668 (1984). Doc. 7 at 23. According to Taylor, a court must apply an "objective standard in reviewing the tactics of the lawyer rather than relying on the lawyer's subjective perception of whether a conflict existed." *Id*. at 18. Taylor maintains that *Sullivan*, *Holloway v. Arkansas*, 435 U.S. 475 (1978), and *Glasser v. United States*, 315 U.S. 60 (1942), preclude courts from applying a "highly deferential" standard to counsel's actions when a *Sullivan* claim is advanced. Doc. 7 at 24.

Taylor's argument fails. The state supreme court did not uncritically accept Prusak's assessment of the proffered witnesses, his view that the prosecution's case against Taylor was weak, or his subjective belief that jointly representing Taylor and Lowell presented no conflict of interest. Instead, the court engaged in a detailed and independent evaluation of the record and, based on that evaluation, concluded that Prusak's assessments, views, and beliefs were correct, that the alleged conflict did not adversely affect Prusak's performance, and therefore that Taylor's Sixth Amendment rights were not violated. *See Taylor*, 930 N.E.2d at 972-74; *see also id*. at 974 (noting that the court had "review[ed] the entire record"). Accordingly, while Taylor's understanding of the law may be correct, the state supreme court *did* apply an objective standard when evaluating Prusak's reasons for not calling the proffered witnesses and did *not* accord a "high degree of deference" to Prusak's testimony.

### III. The State Supreme Court's Factual Determinations

Finally, Taylor argues that the state supreme court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. A state court decision involves an "unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Morgan v. Hardy*, 662 F.3d 790, 801 (7th Cir. 2011). "[A] state court's factual finding is never unreasonable 'merely because the federal habeas court would have reached a different conclusion in the first instance.' Rather, the state court's determination of the facts must have been an unreasonable error in light of the evidence presented to that court." *Collins v. Gaetz*, 612 F.3d 574, 586 (7th Cir. 2010) (quoting *Wood v. Allen*, 130 S. Ct. 841, 849 (2010)). "[F]actual determinations of a state court are presumed to be correct and hence not 'unreasonable,' unless a petitioner can show otherwise by clear and convincing evidence."

*Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004); *see also Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010).

To support his contention that the state supreme court unreasonably determined the facts, Taylor relies on testimony adduced during the post-conviction evidentiary hearing. He maintains that the court "committed clear factual error by finding contradictions in the testimonies and affidavit of the three proffered witnesses that simply did not exist," that Prusak's testimony was "filled with conclusory statements and general comments about why he did not present the proffered witnesses," and that Prusak "never provided an explanation for" his statement that the proffered witnesses "made a terrible impression on him." Doc. 7 at 27-29 (internal quotation marks omitted). Taylor's challenges face a strong headwind under the AEDPA. "[I]n reviewing the state trial and appellate courts' adjudication of an ineffective assistance claim," a federal habeas court "MUST presume that all factual determinations made by the state courts, *including credibility determinations*, are correct, unless rebutted by clear and convincing evidence." *Murrell v. Frank*, 332 F.3d 1102, 1112 (7th Cir. 2003) (some emphasis omitted); *see also Conner*, 375 F.3d at 652. Having reviewed the evidentiary hearing transcript, the court finds that Taylor has not rebutted the presumption of correctness with clear and convincing evidence. *See Gonzales v. Mize*, 565 F.3d 373, 382 (7th Cir. 2009) ("[t]he Indiana Court of Appeals was entitled to reject [the petitioner's witnesses'] testimony on this point in favor of [the testimony of the attorney with the alleged conflict]").

Contrary to Taylor's submission, it is of no moment that the state supreme court "ignored" the fact that Prusak "was testifying from his memory" regarding what occurred during his representation of Taylor. Doc. 7 at 28. "[E]ven a state court 'opinion' consisting of the single word 'affirmed' is entitled to the full deference that the habeas corpus statute demands be

given determinations by state courts." *Price v. Thurmer*, 637 F.3d 831, 839 (7th Cir. 2011). This therefore cannot infer error from the state supreme court's failure to expressly note that Prusak was testifying from his memory. It is also unclear why this fact makes a difference, as Taylor's witnesses also testified from their memories.

Nor did the state supreme court fall short by discussing what Taylor characterizes as "irrelevant" contradictions in the testimony of Taylor's evidentiary hearing witnesses while "fail[ing] to recognize that none of the witnesses saw [Taylor] hand [Lowell] the gun." Doc. 7 at 28-29. The state court was not required to recognize, let alone discuss, every piece of evidence that arguably could have supported a different outcome. *See Richter*, 131 S. Ct. at 784 (even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief"). Additionally, the contradictions discussed by the state court were not irrelevant. Although Taylor's witnesses all testified that they did not see Taylor hand Lowell a gun before the shooting, inconsistencies in other portions of their testimony bore negatively on the their credibility. *See Sprosty v. Buchler*, 79 F.3d 635, 645 (7th Cir. 1996) (holding that the trial court's decision to discredit the testimony of two witnesses was supported by inconsistencies in their testimony). For example, he state court correctly noted that while Anderson testified that Taylor wasn't involved in the fight because he was breaking Carter's car windows, Anderson admitted on cross-examination that, during the fight, he could not actually see Taylor from where he was standing. Doc. 17-16 at 180-82.

Moreover, Taylor ignores other reasons justifying the state supreme court's dim view of the proffered witnesses' credibility. Bingham, Plummer, and Anderson were all long-time friends of Taylor, with Bingham and Anderson being Taylor's fellow gang members, and

Plummer belonging to a gang that "get[s] along" with Taylor's gang. *Taylor*, 930 N.E.2d at 965-66; Doc. 17-16 at 150-51, 164-65, 184-85. Bingham, Plummer, Anderson, and Taylor all admitted to having multiple felony convictions. *Taylor*, 930 N.E.2d at 965-66; Doc. 17-16 at 149, 163, 182-83. Plummer and Anderson signed affidavits that misidentified the shooter. *Id*. at 169-72, 185-88. Plummer's affidavit actually identified Taylor as the shooter; Plummer claimed he did not read the affidavit before signing it. *Id*. at 171-72, 175-76. Taylor was angry about his conviction and thirty-five year prison sentence, and was "especially angry" with Prusak for not calling any of his proffered witnesses at trial. Doc. 17-15 at 158. This gave Taylor everything to gain, and virtually nothing to lose, by lying about his interactions with Prusak.

In sum, even if a "generous reading [of the record]" suggests that the state supreme court "had reason to question [Prusak's] credibility," this court is not "compel[led] [to] conclu[de] that the [state] court had no permissible alternative but to reject" Prusak's testimony and thus that there was an actual conflict of interest that adversely affected Prusak's performance. *Rice v. Collins*, 546 U.S. 333, 341 (2006). "Reasonable minds reviewing the record might disagree about [Prusak's] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination." *Id*. at 341-42.

## Conclusion

For the foregoing reasons, Taylor's petition for a writ of habeas corpus is denied. Taylor may appeal only if he is granted a certificate of appealability ("COA"). *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011); 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts. The applicable standard is as follows:

> To obtain a COA under § 2253(c), a habeas petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or,

> for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see also Lavin*, 641 F.3d at 832; *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003). Taylor's Sixth Amendment claim is not insubstantial, and reasonable jurists could debate his entitlement to habeas relief. The court therefore issues a certificate of appealability on the following question: Whether trial counsel's joint representation of Petitioner Levell Taylor and his co-defendant/brother, Lowell Taylor, violated Petitioner's constitutional right to the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

June 14, 2012                                              _____
                                                            United States District Judge